UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MICHELLE D. JAMES,

        Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

19-CV-147
DECISION & ORDER

---

On January 28, 2019, the plaintiff, Michelle D. James, brought this action under the Social Security Act ("the Act"). She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that she was not disabled. Docket Item 1. On October 3, 2019, James moved for judgment on the pleadings, Docket Item 12; on January 17, 2020, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 15; and on February 7, 2020, James replied, Docket Item 16.

For the reasons stated below, this Court grants James's motion in part and denies the Commissioner's cross-motion.[1]

## **STANDARD OF REVIEW**

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first

---

[1] This Court assumes familiarity with the underlying facts, the procedural history, and the ALJ's decision and will refer only to the facts necessary to explain its decision.

decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id.* This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to correct legal principles." *Johnson*, 817 F.2d at 986.

## DISCUSSION

James argues that the Administrative Law Judge ("ALJ") erred in relying on a stale medical opinion to determine her physical residual functioning capacity ("RFC"). Docket Item 12-1. This Court agrees that the ALJ erred and, because that error was to James's prejudice, remands the matter to the Commissioner.

I.    PHYSICAL RFC AND STALE MEDICAL OPINION

"A stale medical opinion does not constitute substantial evidence to support an ALJ's findings." *Majdandzic v. Comm'r of Soc. Sec.*, 2018 WL 5112273, at *3 (W.D.N.Y.

decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id.* This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to correct legal principles." *Johnson*, 817 F.2d at 986.

## DISCUSSION

James argues that the Administrative Law Judge ("ALJ") erred in relying on a stale medical opinion to determine her physical residual functioning capacity ("RFC"). Docket Item 12-1. This Court agrees that the ALJ erred and, because that error was to James's prejudice, remands the matter to the Commissioner.

I.    **PHYSICAL RFC AND STALE MEDICAL OPINION**

"A stale medical opinion does not constitute substantial evidence to support an ALJ's findings." *Majdandzic v. Comm'r of Soc. Sec.*, 2018 WL 5112273, at *3 (W.D.N.Y.

Oct. 19, 2018). For a medical opinion to be stale, not only must there be a significant "gap of time between when [the] opinion [was] rendered and the disability hearing," *id.*, but there also must be subsequent treatment notes "indicat[ing] a claimant's condition has deteriorated" over that period, *Whitehurst v. Berryhill*, 2018 WL 3868721, at *4, *5 (W.D.N.Y. Aug. 14, 2018). In other words, the "mere passage of time does not render an opinion stale," *id.*, but "significant developments" in an individual's medical history after the examination might, *Davis v. Berryhill*, 2018 WL 1250019, at *3 (W.D.N.Y. Mar. 11, 2018).

Here, the ALJ assigned "great weight" to the November 2015 opinion of the consulting internist, Donna Miller, D.O., that James's only physical limitations were "mild" limitations in "heavy lifting and carrying." *See* Docket Item 8 at 33; *id.* at 700. Dr. Miller had observed that James walked with a normal gate and did not require assistance changing or getting on the examination table. *See* Docket Item 8 at 698-99. She also found that James had full flexion, extension, and movement of her cervical spine, and no abnormalities in her thoracic spine, but reduced motion in her lumbar spine. *See id.* at 699.

More than a year later, in January 2017, James was involved in a motor vehicle accident that landed her in the emergency room. *See* Docket Item 8-1 at 110-13. Seven months later, in August 2017, James was involved in another motor vehicle accident that again resulted in hospitalization. *See* Docket Item 8-1 at 106-09. By the time the ALJ rendered his decision in April 2018, therefore, significant medical events had occurred about which Dr. Miller's opinion could not possibly have spoken. The

question, then, is whether those significant medical events also resulted in the material deterioration of James's physical health.

Treatment notes from James's treating chiropractor, John Ward, D.C., indicate that James's physical health did indeed deteriorate. For example, one week after the January accident, Dr. Ward noted that James "[c]omplain[ed] of sharp shooting pains in her neck, shoulders, left arm, left leg[,] and left buttock." Docket Item 8-1 at 215. He found that she had significantly decreased range of motion in her cervical and lumbar spine. *See id.* at 222-23. Dr. Ward reassessed James in March, May, and July 2017 and found an improved, but still below normal, range of motion in both regions. *See id.* at 242-43, 265-66, 285-86. When Dr. Ward assessed James in August 2017 after the second motor vehicle accident, her range of motion in the cervical and lumbar spine regions again had decreased significantly. *See id.* at 301-02. James showed improvement upon reassessment in November 2017, but her results were still below the norm. *See id.* at 324-25.

Treatment notes from unspecified providers at RES Physical Medicine and Rehab Services showed similar findings. *See, e.g.*, Docket Item 8 at 851-53 (June 2017 treatment note documenting that James walked with an "antalgic gait"; had decreased range of motion in her lumbar and thoracic spine regions; and had "tenderness, trigger points, hypertonicity, and spasms" in those same regions); Docket Item 8-1 at 5 (observing that James was unable to walk heel-to-toe in June 2017). Taken together, these treatment notes show that Dr. Miller's opinion that James had only mild physical limitations was stale by the time the ALJ rendered his decision.

4

The government argues that James's condition was essentially the same before and after her accidents, but the medical evidence in the record belies that argument. In addition to the evaluations of Dr. Ward and the providers at RES Physical Medicine and Rehab Services, for example, the radiographic evidence demonstrated deterioration. James's cervical MRI in February 2017 evidence "an anterior annular tear, which was new." Docket Item 8 at 28. Her lumbar MRI on the same date showed "moderate progression" of her "severe disc space narrowing." *Id.* In other words, the objective medical evidence suggested that James's back problems had worsened after Dr. Miller rendered her opinion and James was in an auto accident. And that alone made Dr. Miller's evaluation stale.

Because Dr. Miller's opinion was stale, it does not provide substantial evidence supporting the ALJ's determination that James could "occasionally climb ramps and stairs, kneel, crouch, crawl, bend and twist." *See* Docket Item 8 at 22. The ALJ's determination therefore survives judicial scrutiny only if supported by other medical evidence in the record. But the ALJ gave "little weight" to Dr. Ward's opinion, [2] and otherwise did not cite any medical evidence supporting his physical RFC determination. *See* Docket Item 8 at 33. So the ALJ's physical RFC determination, at least with

---

[2] Although chiropractors are "other source[s]," *see* 20 C.F.R. § 416.913(d)(1) (2015), whose opinions cannot "establish the existence of a medically determinable impairment," an opinion from such a source still could "outweigh the opinion of an 'acceptable medical source[ ]' . . . [if, f]or example, . . . [the source] has seen the individual more often . . . and has provided better supporting evidence and a better explanation for his or her opinion," *see* Titles II and XVI: Considering Opinions and Other Evidence from Sources Who Are Not "Acceptable Medical Sources" in Disability Claims, 71 Fed. Reg. 45,593, 45,596 (Aug. 9, 2006). Because Dr. Ward treated James for over a year, an ALJ could reasonably find that his opinion deserved significant weight.

respect to James's functioning after the motor vehicle accidents, was based on little more than his "own surmise."  See Cosnyka v. Colvin, 576 F. App'x 43, 46 (2d Cir. 2014) (summary order); see also Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998) ("In the absence of a medical opinion to support [an] ALJ's finding as to [a claimant's] ability to perform [a certain level of] work, it is well-settled that the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion.  While an ALJ is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who submitted an opinion to or testified before him." (citation and original alterations omitted)); Shaw v. Chater, 221 F.3d 126, 135 (2d Cir. 2000) ("[W]hile a physician's opinion might contain inconsistencies and be subject to attack, 'a circumstantial critique by non-physicians, however thorough or responsible, must be overwhelmingly compelling in order to overcome a medical opinion.'" (quoting Wagner v. Sec. of Health & Human Servs., 906 F.2d 856, 862 (2d Cir. 1990)).

   To the extent the ALJ rejected Dr. Ward's opinion, therefore, the ALJ had no other competent opinion on which to base his post-accident physical RFC and was required to solicit additional medical evidence.  "Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record."  Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996) (citing Echevarria v. Sec'y of Health & Human Servs., 686 F.2d 751, 755 (2d Cir. 1982)).  Thus, "where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history 'even when the claimant is

represented by counsel or . . . by a paralegal.'"  *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (quoting *Perez*, 77 F.3d at 47)).

In short, because the medical opinion gone stale created an "obvious gap[ ] in the administrative record" as it related to James's physical functioning after the January and August 2017 motor vehicle accidents, the ALJ was obligated make a reasonable effort to fill that gap before rejecting James's application for disability benefits.  More specifically, the ALJ was required to obtain a non-stale medical source statement.  *See Rosa*, 168 F.3d at 79 n.5 (quoting *Perez*, 77 F.3d at 48)).  Because he did not do so, the Court remands the matter so that the ALJ may develop the record and then re-evaluate James's application in light of the expanded record.

## **CONCLUSION**

For the reasons stated above, the Commissioner's motion for judgment on the pleadings, Docket Item 15, is DENIED, and James's motion for judgment on the pleadings, Docket Item 12, is GRANTED in part and DENIED in part.  The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated:  July 6, 2020
Buffalo, New York

>  */s/ Hon. Lawrence J. Vilardo*
> LAWRENCE J. VILARDO
> UNITED STATES DISTRICT JUDGE